UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| IRVIN LAVON REDUS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 1:15 CV 169 JMB |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM AND ORDER**[1]

Irvin Redus ("Plaintiff") appeals the final decision of the Acting Commissioner of Social Security ("Defendant") denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Because Defendant's decision is supported by substantial evidence and correctly applies the governing law, it is affirmed. See 42 U.S.C. § 405(g).

## **I.**     **Factual Background and Medical Evidence**[2]

Plaintiff applied for Disability Insurance Benefits ("DIB") on April 17, 2013, alleging that he became disabled on January 1, 2012, due to osteoarthritis, degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease ("COPD"), hypertension and migraine headaches. (Tr. 115) Plaintiff's application was initially denied, and following a July 2014 hearing, an administrative law judge ("ALJ) again denied Plaintiff's application. (Tr. 11-27) The Appeals Council then declined to review the ALJ's decision. (Tr. 1) Plaintiff has therefore exhausted his administrative remedies, and the matter is properly before this Court.

---

[1] This case is before the Court for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).

[2] The Court has reviewed the entire administrative record in this matter. In this opinion, however, the Court will only discuss those portions of the record that are most relevant to resolving the issues raised by the parties.

## A. Administrative Hearing Testimony

At the administrative hearing, Plaintiff (with counsel present) testified as to the nature of his disabling conditions, his daily activities, and his past work experience at his brother's sawmill, where he worked as a head sawer until it closed in November of 2007. (Tr. 36-37) Plaintiff testified that he has not worked since that time. (Id.) Therefore, Plaintiff's insured status expired on December 31, 2012, and he had to prove disability before that date. (Tr. 14)

As to his COPD, Plaintiff testified that in September of 2011, he sought medical treatment at the local Ripley County Memorial Hospital because he "was feeling bad" and "everything" hurt; he was having breathing problems; and he "didn't have much energy." (Tr. 38-39) Plaintiff was also worried that he might have COPD after 40 years of smoking cigarettes. (Tr. 168, 202) Computerized Tomography ("CT") scans taken at that time showed a "calcified granuloma" in the left lung, but no acute pulmonary infiltrates, and no other cardiopulmonary disease. (Tr. 172-73) In fact, no treatment was recommended, other than follow up in six months.[3] (Tr. 182)

As it relates to his back, Plaintiff stated that his back issues began in 2003, after a 2001 car accident, for which he sought chiropractic treatment with Dr. Les Lamoureux, D.C. (Tr. 196-98) Within two months, in February of 2003, Plaintiff made sufficient progress to get back to work. Dr. Lamoureux predicted a "full recovery," and opined that Plaintiff could "perform all duties" at work. (Id.) Plaintiff discontinued treatment with Dr. Lamoureux in March, 2003 because he was "feeling better." (Tr. 192)

Notwithstanding this initial full recovery, Plaintiff testified at the hearing that his back issues got progressively worse until 2007, when the saw mill closed, although he continued to

---

[3] Even though no treatment was recommended, Plaintiff indicated that he used his wife's Albuterol to treat breathing difficulties because he could not afford his own medication. (Tr. 39)

work and apparently did not seek medical treatment, apart from three sessions with Dr. Lamoureux in 2005. (Tr. 41, 194) Six years later, in 2011, Plaintiff returned to Dr. Lamoureux, complaining of neck, lower back, and hip pain. He saw Dr. Lamoureux regularly for six months, until September 2011. (Tr. 184, 194) Plaintiff testified that in September of 2011, he had difficulty walking and could only walk for "probably 150 feet" before he "had to rest." (Tr. 40) By 2012, Plaintiff said his back "just ached all the time," and he had hip and leg pain that was "pretty much constant," all of which required him to lay down "every couple hours." (Tr. 42-43) Plaintiff also stated that he had headaches during this time, but that they "eased up a lot" when he started taking high blood pressure medicine in April of 2014. (Id.) Finally, Plaintiff indicated that he had a heart attack in 2014, and he assumes that he had heart problems in 2012. He claims that he experienced fatigue in 2012, and that his back also hurt in 2012, but that both of those symptoms were worse in 2014. (Tr. 45)

As will be discussed in more detail, below, a Vocational Expert ("VE") also testified at Plaintiff's administrative hearing. (Tr. 47-52) The VE listened to Plaintiff's description of his old job as a head sawer, and discussed the requirements of that job as well as how that job is generally performed in the national economy. The VE then testified that Plaintiff was capable of performing his prior work, based upon the ALJ's assessment of Plaintiff's physical limitations. (Tr. 50-51)

### B. Relevant Medical Evidence

As to the objective medical evidence, there are no medical records for the time period at issue in this case—January 1, 2012, through December 31, 2012. Plaintiff did, however, undergo a consultative examination in June of 2013. That exam (more than five months after Plaintiff's date of last insured), was conducted by Dr. Chul Kim, M.D. (Tr. 205) Plaintiff told

Dr. Kim about the history of his neck, back, and hip pain following his 2001 accident, and his chiropractic treatment. (Tr. 201) Plaintiff told Dr. Kim that at that time—June of 2013—he had constant neck and lower back pain, for which he took Excedrin "once in a while" (Tr. 201) In his exam, Dr. Kim noted that Plaintiff expressed some hip pain with abduction, but his strength, musculature, and range of motion were good. (Tr. 205) Ultimately, Dr. Kim found Plaintiff was suffering from multiple joint pain, osteoarthritis, COPD, and migraine headaches. (Tr. 204)

Also in July 2013, Plaintiff had x-rays taken of his lumbar spine. These records showed moderate degenerative disc disease at L4-L5 and L5-S1. (Tr. 208) X-rays on Plaintiff's right hip showed minimal osteoarthritis with well-maintained joint space. (Tr. 209) Further x-rays from April of 2014 (almost a year and a half after Plaintiff's date of last insured) showed that Plaintiff's right hand evidenced very mild arthritic changes that appeared to be osteoarthritic; his cervical spine showed mild degenerative disc disease; and his lumbar spine showed moderate disc space narrowing and severe facet joint degenerative changes.[4] (Tr. 230, 232, 234)

## II.   **ALJ's Decision**

The ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a). At steps one through three, the ALJ found that: Plaintiff had not been gainfully employed since the alleged disability onset date; that Plaintiff's osteoarthritis, degenerative disc disease of the cervical and lumbar spine and COPD were severe impairments;[5] and that none of Plaintiff's impairments, alone or in combination, met one of the listed impairments. (Tr. 14, 16)

At step four, the ALJ concluded that Plaintiff retained the Residual Functional Capacity ("RFC") to "perform light work with lifting and/or carrying limited to twenty (20) pounds

---

[4] Plaintiff was subsequently awarded benefits under Title XVI as of April, 2013. (Tr. 56) The question here is whether he was disabled between January 1, 2012 and December 31, 2012.

[5] Plaintiff also alleged that he suffers from headaches, cardiovascular disease, ulcers, and kidney issues. The ALJ found these impairments to be non-severe. (Tr. 15-16)

occasionally and ten (10) pounds frequently, standing and/or walking limited to six (6) hours of an eight (8) hour workday (including normal breaks) and sitting limited to six (6) hours of an eight (8) hour workday (including normal breaks) as defined in 20 C.F.R. 404.1567(b) except that [Plaintiff] could only frequently climb ramps or stairs; could only frequently balance, stoop, kneel, crouch or crawl; was unable to climb ropes, ladders or scaffolding; was limited to working environments that did not include any exposure to more than normal levels of fumes, nauseous odors, dust, mists or gas; and was limited to working environments that did not include any exposure to poor ventilation below the levels normally found in the offices of a commercial building." (Tr. 17) In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding the intensity, persistence, or functionally limiting effects of his pain or other symptoms, were not entirely credible. (Tr. 22)

Also at step four, the ALJ found Plaintiff capable of performing his past work as a head sawer, and therefore found that Plaintiff was not disabled.[6] As noted above, Plaintiff asked the Appeals Council to review this decision, but that request was declined, and Plaintiff filed suit. (Tr. 1-5)

The Court notes that, after filing the Complaint in this case, Plaintiff's counsel moved to withdraw from his representation of Plaintiff. (ECF No. 13) The Court granted that motion in an order dated December 30, 2015, but because Plaintiff's brief in support of the Complaint was due the next day, the Court, *sua sponte*, granted Plaintiff sixty days to either find new representation or file a *pro se* brief. (ECF No. 14) Apparently, Plaintiff was not successful in securing new counsel because no new attorney entered an appearance on Plaintiff's behalf. Likewise, Plaintiff did not submit a *pro se* brief.

---

[6] Because the ALJ found that Plaintiff was capable of performing his past work, the ALJ did not proceed to step five of the five step analysis. See 20 C.F.R. § 404.1520(a)(4)(iv).

Instead, on February 22, 2016, Plaintiff filed a one page, handwritten letter to Defendant which this Court will construe as a brief in support of his Complaint. (ECF No. 19) In the letter, Plaintiff simply asks Defendant "to reconsider [his] claim for disability." (Id.) Plaintiff does not allege any specific legal issues with the ALJ's decision. Instead, Plaintiff's letter explains that he was unable to provide medical records in support of his disability application because he "could not afford to see a doctor."[7] (Id.) In addition, Plaintiff states that he has medical records "from 2002 to 2011" which demonstrate impairments (even though Plaintiff claims he was disabled during 2012). (Id.) Finally, Plaintiff states that he had a heart attack in 2014, and again asks Defendant "to reconsider [his] claim." (Id.)

Because Plaintiff did not file a brief articulating specific issues with the ALJ's decision, rather than dismissing Plaintiff's Complaint, the Court will address the ALJ's determinations at each step of the sequential evaluation to see if they are supported by substantial evidence. See Ball v. Colvin, 608 Fed. Appx. 444 (8th Cir. 2015). The Court will also discuss the topics raised in Plaintiff's letter where relevant.

After reviewing the administrative record, and after considering the points raised in Plaintiff's letter, the Court concludes that the ALJ's findings—at all steps of the sequential process—are supported by substantial evidence, and therefore affirms the ALJ's decision.

## III.   Legal Framework and Standard of Review

"To be eligible for [disability] benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[7] As discussed below in more detail, Plaintiff's failure to provide medical records in support of his disability application was a major factor in the ALJ's consideration.

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the ALJ's finding, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

**IV.    Discussion**

As noted above, Plaintiff has not articulated specific reasons that the ALJ's decision should be reversed. The Court will therefore review the ALJ's decisions at each step of the

sequential analysis to ensure that the decision is supported by substantial evidence. See Ball v. Colvin, 608 Fed. Appx. 444 (8th Cir. 2015).

### A. **Step One**

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2012, through the date he was last insured on December 31, 2012. (Tr. 14) This finding was in Plaintiff's favor and was based on Plaintiff's Work History, Earnings Reports, and testimony that the ALJ credited. (Tr. 37-38, 125-28) Therefore, substantial evidence supports this conclusion.

### B. **Step Two**

The ALJ's findings at step two—that Plaintiff suffers from the severe impairments of osteoarthritis, degenerative disc disease of the cervical and lumbar spine, and COPD; and that Plaintiff's headaches, cardiovascular issues, ulcers, and kidney issues were not severe impairments in 2012—are also supported by substantial evidence.

An impairment is severe if it has more than a minimal impact on an individual's ability to do basic work activities. See 20 C.F.R. § 404.1521(a). On the other hand, an impairment "is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Symptoms "will not be found to affect [a claimant's] ability to do basic work activities *unless medical signs or laboratory findings* show that a medically determinable impairment(s) is present." 20 C.F.R. § 1529(b) (emphasis added). The burden of proving severity is Plaintiff's. See Kirby, 500 F.3d at 707. In this case, the ALJ thoroughly explained why Plaintiff did not meet his burden to prove that his headaches, cardiovascular issues, ulcers,

and kidney issues were severe impairments *before December 31, 2012*, the date of last insured. (Tr. 14-16)  The ALJ's findings are supported by substantial evidence.

As to Plaintiff's headaches, the ALJ noted several pieces of evidence in the record that support the conclusion that they were not a severe impairment (or at least, that Plaintiff had not met his burden to prove they were severe).  First, there are no medical records from the relevant time period documenting any complaints of headaches or treatment for that condition.  This fact supports the conclusion that the headaches were not a severe impairment.  See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011) (holding that migraine headaches are not a severe impairment where the record "is void of any diagnostic testing" confirming their frequency and severity). Second, Plaintiff treated his headaches with over the counter aspirin and/or Excedrin, thus indicating that they were not severe.  (Tr. 137)  Cf. Loving v. Dept. of Health & Human Servs., 16 F.3d 967, 971 (8th Cir. 1994) (holding that use of over-the-counter medication to deal with pain is inconsistent with complaints of disabling pain).  Third, by Plaintiff's own testimony, his headaches "eased up a lot" after he was prescribed high blood pressure medication.  (Tr. 14)  An impairment is not severe where it medication effectively addresses it.  See Martise, 641 F.3d at 924 (holding that migraine headaches are not a severe impairment where they respond to medication).  The ALJ properly determined Plaintiff's headaches were not a severe impairment.

As to Plaintiff's cardiovascular problems, it appears that Plaintiff had a heart attack in July of 2014, over eighteen months after his date of last insured.  (Tr. 239-49)  But there is no medical evidence suggesting that this impairment existed between January and December, 2012. The ALJ therefore correctly found that this impairment was not severe.  Cf. Milton v. Schweiker, 669 F.2d 554, 555 n.1 (8th Cir. 1982) (per curiam) (noting that a heart attack subsequent to the expiration of insured status without evidence of a heart condition during the relevant time period

cannot serve as a basis for recovering disability benefits); see also Martise, 641 F.3d at 924 (requiring diagnostic testing in order for an impairment to be severe). While there was some evidence that Plaintiff was diagnosed with high blood pressure in 2011, there are no reports of treatment for this condition during 2012, and no evidence as to how any purported high blood pressure affected Plaintiff's ability to work; and indeed, evidence from 2014 indicates that his high blood pressure is controlled by medication. Cf. Martise, 641 F.3d at 924 (holding that an impairment is not severe if controlled by medication). The ALJ's findings regarding Plaintiff's cardiovascular issues are supported by substantial evidence.

As to Plaintiff's ulcer and kidney issues, Plaintiff did not originally allege these impairments in his application for disability benefits. This indicates that they were not severe during 2012, because Plaintiff filed his application in April of 2013, yet left these allegations out. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (holding that failure to allege an impairment as a grounds for disability is significant, even if evidence of that impairment is later developed). Also, the only medical evidence relating to these impairments comes from April of 2014. (See Tr. 224, 228) (showing mild kidney damage, including mildly decreased glomerular filtration rate) The failure to provide medical evidence that he suffered from these impairments *in 2012* means that Plaintiff has not met his burden at step two. Cf. Martise, 641 F.3d at 924 (requiring diagnostic testing in order for an impairment to be severe). The ALJ's findings at step two are supported by substantial evidence.

### C. Step Three

Substantial evidence also supports the ALJ's determination at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-17)

To qualify for disability benefits at step three, a claimant must establish that his impairments meet or equal a listing. KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016). Furthermore, "[a]n impairment meets a listing only if it meets *all* of the specified medical criteria.'" Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530. Again, the burden is on Plaintiff at this step in the sequential process. McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).

The ALJ first considered whether Plaintiff suffered from musculoskeletal impairments. (Tr. 16) ("[T]he claimant's musculoskeletal condition and associated history did not meet or medically equal the requirements of a listing contemplated under section 1.00.") The ALJ reasoned that Plaintiff did not meet a listing because he did not exhibit an inability to ambulate effectively or a major dysfunction of any joint; he did not have an inability to perform fine and gross motor movements effectively; and there was no evidence of nerve root compression, or of a positive straight leg raising in the supine position. (Tr. 19-17) Because all of the musculoskeletal listings require at least one of these findings, the ALJ concluded that Plaintiff had not met his burden to prove that he met all of the elements of a listing. This is a correct application of the governing law. See Sullivan, 493 U.S. at 531 (holding that an inability to meet any element of a listing means that Plaintiff is not disabled at this step).

In this case, multiple sources in the medical record show that Plaintiff can ambulate effectively, and there is no evidence of inability to perform fine or gross motor movements, or nerve root compression, or positive straight leg raising. (See, e.g., Tr. 40, 131, 203) Therefore, the ALJ's finding that Plaintiff does not qualify for disability under any musculoskeletal listing is supported by substantial evidence.

At a minimum, Plaintiff has not met *his burden* to prove that he met all the elements of the Listing. See Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010) ("The claimant has the burden of proving that his impairment meets or equals a listing."). As noted above, Plaintiff submitted no medical evidence from 2012 demonstrating the elements of this listing. This is a material omission in Plaintiff's disability application. Martise, 641 F.3d at 924.

Additionally, Plaintiff did not meet his burden in proving that his COPD met or medically equaled the requirements of a listing under Section 3.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 because there was no pulmonary testing performed during the period as required for evaluation under listing 3.02A, 3.02B, or 3.02C. Indeed, hospital records from July of 2014 show there was no acute cardiopulmonary disease, even eighteen months after Plaintiff's date of last insured. (Tr. 239) The ALJ's findings at step three are supported by substantial evidence.

### D. RFC Finding

Before proceeding to step four, the ALJ was required to analyze Plaintiff's Residual Functional Capacity ("RFC"). See 20 C.F.R. § 404.1520(a)(4). An RFC is defined as the most that an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). The ALJ was required to determine Plaintiff's RFC based on all of the evidence in the record, including Plaintiff's testimony regarding symptoms and limitations, medical treatment records, and medical opinion evidence. Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013). In considering Plaintiff's subjective allegations of symptoms, the ALJ had to analyze Plaintiff's credibility, and make a credibility finding on the record. The ALJ did so, expressly discounting Plaintiff's credibility. (Tr. 22) This Court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" Buckner v. Astrue, 646 F.3d 549,

558 (8th Cir. 2011)(quoting Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010)). Here, the ALJ properly discounted Plaintiff's credibility.

First, the ALJ noted that there were no medical records indicating Plaintiff received treatment during the relevant time period of January 2012 through December of 2012. This counts against Plaintiff's credibility. See Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (holding that failure to seek ongoing medical treatment is a proper basis to discount a claimant's subjective complaints). In his one page brief, Plaintiff makes an allegation that the reason that he has no medical records is that he was too poor to see a doctor. (ECF No. 19 at 1) Financial difficulty—in and of itself—is not a sufficient excuse for Plaintiff's failure to provide medical evidence in support of his disability claim. See Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (rejecting a plaintiff's allegation that he could not seek medical treatment because he did not have insurance and could not afford treatment); see also Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992) (holding that "the fact that [the claimant] is under financial strain is not determinative"). This is especially true here because, as in Murphy, "there [is] no evidence that [Plaintiff] sought to obtain any low-cost medical treatment from [his] doctor or from clinics and hospitals [and] there is no evidence that the claimant had been denied medical care because of [his] financial condition." Murphy, 953 F.2d at 386-87. This allegation of poverty, without more, is not enough to excuse Plaintiff's inability to provide medical records.

Second, Plaintiff made multiple inconsistent statements throughout the course of this process, thereby damaging his credibility. For instance, in his Function Report, submitted in April of 2013 (four months after his date of last insured), Plaintiff alleged limitations on his physical capabilities that are much less restrictive, with regards to 2012, than at his hearing in July of 2014, where he testified that his abilities back in 2012 were more restricted. Inconsistent

statements are a proper basis upon which to discount Plaintiff's credibility. See Raney v. Barnhart, 396 F.3d 1007, 1101 (8th Cir. 2005); see also Halverson, 600 F.3d at 922 (holding that discrepancies between a claimant's function report and her hearing testimony "reflect negatively upon that claimant's credibility").

Third, the ALJ also properly discounted Plaintiff's allegations of the severity of pain, which Plaintiff treated with over-the-counter aspirin or Excedrin. (Tr. 201) Plaintiff's reliance on over-the-counter medication and failure to seek more aggressive treatment is not suggestive of a disabling condition. See Loving, 16 F.3d at 971 (holding that the use of over-the counter medication is inconsistent with complaints of disabling pain).

Fourth, Plaintiff stopped working for reasons unrelated to any medical impairment (his brother's saw mill closed), which suggests that Plaintiff's subsequent unemployment was not due to any medical impairment. See Medhaug v. Astrue, 578, F.3d 805, 816-17 (8th Cir. 2009); cf. Julin v. Colvin, No. 15-1280, 2016 WL 3457265 at *3 (8th Cir. June 24, 2016) (holding that "sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems"). Indeed, when asked why he did not get a job after the saw mill closed in 2007, Plaintiff responded that he was unable to find a job. (Tr. 21, 37, 43)

Here, it is clear that the ALJ gave several good reasons to discount Plaintiff's credibility concerning the severity of his symptoms in 2012. This determination is entitled to deference by the Court. See Buckner, 646 F.3d at 558 (noting that a federal court "will defer to the ALJ's credibility finding if the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so") (internal quotation marks and citations omitted).

Given that the ALJ found Plaintiff to be not entirely credible, the ALJ's findings concerning Plaintiff's RFC in general, and his exertional capabilities in particular, are supported

by substantial evidence. The lifting/carrying requirements are consistent with admissions that Plaintiff made and with Plaintiff's testimony as to what his old job entailed. (See Tr. 146) (Plaintiff admitting—in April of 2013—that he could lift "about 30 to 40 pounds"); (see also Tr. 201) (Plaintiff admitting to Dr. Kim that he is able "to lift about 50 pounds"). They are also consistent with the mild findings in the x-rays taken in April of 2014. Furthermore, the vocational expert agreed that the type of work described by Plaintiff was light work. The ALJ also took into account Plaintiffs COPD and alleged breathing difficulties with the non-exertional limitations found in the RFC, such as a properly ventilated work space. [8]

### E. Step Four

At step four, the ALJ found that Plaintiff was capable of performing his past work as a head sawer. (Tr. 25) In making this determination, the ALJ questioned Plaintiff in considerable detail about his past work as a sawer, and ascertained its requirements. The ALJ also sought the evidence of a vocational expert. The vocational expert, who listened to Plaintiff's description of his prior work, testified that Plaintiff's description of the job was generally consistent with how that job is performed in the national economy. (Tr. 26-27) The vocational expert then testified that a person with Plaintiff's RFC could perform his past work as it had been described.[9] Using

---

[8] Additionally, the Court notes that it remained Plaintiff's burden to prove his RFC, not Defendant's. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Plaintiff proffered little evidence (apart from his properly-discounted testimony) concerning his RFC.

[9] The Court notes that in posing its hypothetical question to the VE, the ALJ included all of the limitations found in his RFC except for the sitting/standing and walking exertional requirements. (See Tr. 50-51) Normally, a hypothetical question must contain all of the limitations found by the ALJ in the RFC. See Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005). Here, however, the failure of the ALJ to specifically enumerate these limitations in the hypothetical question does not require reversal for several reasons.

First, Plaintiff did not raise this issue, so it is waived. Second, it was Plaintiff's burden to prove that he could not perform his past work, Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991), but Plaintiff failed to meet this burden because he offered no evidence that he could not perform his past work, apart from his properly-discounted hearing testimony. (*continued*)

that testimony, the ALJ also found that Plaintiff could perform the job of head sawer as it is performed in the national economy. This constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff could return to his past work. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (holding that a vocational expert's testimony constitutes substantial evidence supporting the ALJ's determination that plaintiff could perform her past work).[10]

## V. Conclusion

As discussed above, it was Plaintiff's burden to show disability prior to expiration of his insured status. Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994). For the reasons set forth above, Plaintiff has not met this burden. The ALJ thoroughly evaluated the evidence in this case, and gave Plaintiff a full and fair hearing. The Court affirms the decision of the ALJ.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is affirmed, and Plaintiff's Complaint is dismissed with prejudice.

A separate judgment is entered this day.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of July, 2016

---

Third, a close reading of the hearing transcript shows that Plaintiff testified in detail as to the sitting requirements of his prior work. (See e.g. Tr. 48-49) (discussing the fact that Plaintiff's job as a head sawer required him to sit in a cabin, cutting logs, and noting that Plaintiff "[was] sitting almost all day") The VE then discussed in detail the fact that Plaintiff's prior work required him to sit, whereas in the national economy, most head sawers do not sit. (Tr. 50) The discussion also made it clear that there was little or no standing or walking involved in Plaintiff's prior work. A careful reading of the transcript clarifies that the ALJ and the VE did not overlook the sitting/standing and walking exertional requirements, and that the VE was well aware of the exertional requirements of Plaintiff's job when she opined that he could do his past work. Any shortcoming here is an example of deficient opinion writing, at most, and deficient opinion writing is not sufficient grounds for reversal where the ALJ undertook the required analysis. See Welsh v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014).

[10] Because Plaintiff could return to his past work, the ALJ was not required to proceed to step five of the sequential analysis. See 20 C.F.R. § 404.1520(f).

-17-